ROBERT R. GARDNER, AND NATIONWIDE MUTUAL INSURANCE CO. v. THE
NORTH CAROLINA STATE BAR

No. 706PA84

(Filed 2 April 1986)

1. **Attorneys at Law § 1.1— whether insurance company attorneys can represent insureds—jurisdiction to decide**

     The superior court's inherent power to deal with its attorneys provided jurisdiction to decide whether a licensed attorney who was a full-time employee of an insurance company could ethically represent one of the company's insureds as counsel of record in an action brought by a third party for a claim covered by the terms of the insurance policy or appear as counsel of record for the insured in the prosecution of a subrogation claim for property damage. N.C.G.S. 150A-1 *et seq.*, N.C.G.S. 84-36.

2. **Attorneys at Law § 1.1; Insurance § 100— insurance company attorneys representing insured—prohibited as corporation practicing law**

     Insurance company attorneys appearing in court for an insured would fall within the ban of N.C.G.S. 84-5 because the attorneys would be acting in the course of their employment; their actions would thereby be those of the company itself; and the company would not in essence be appearing for itself because the company is not a party to the action, the judgment is against the insured, the insured is responsible for excess damages and collateral penalties, the insured may be called upon to pay the judgment if the company fails, and the insured's property becomes subject to attachment to pay the judgment. The insurance company does not purport to defend or represent its insureds itself when it furnishes a defense by providing an attorney as an independent contractor.

3. **Constitutional Law § 23.4; Attorneys § 1.1— insurance company attorney prohibited from representing insured—not unconstitutional**

     An attorney who was employed full-time by an insurance company was not unconstitutionally prevented from practicing law when he was not allowed to appear before a court representing an insured. Art. I of the N. C. Constitution, Fourteenth Amendment of the U. S. Constitution.

     Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL by respondent from judgment entered out of session by consent of the parties on 21 August 1984 by *Barnette, J.*, following a hearing at the 2 July 1984 Civil Session of Superior Court, WAKE County. Respondent's motion to bypass the Court of Appeals was granted on 30 January 1985. Heard in the Supreme Court 14 May 1985.

*Bryant, Drew, Crill & Patterson, P.A., by Victor S. Bryant, Jr., for petitioner-appellees.*

*L. Thomas Lunsford, II, and James E. Tucker, for respondent-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, for Amicus Curiae, The National Association of Independent Insurers, The Alliance of American Insurers and the American Insurance Association.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., for Amicus Curiae, The North Carolina Bar Association.*

FRYE, Justice.

The parties to this action have brought a single question before this Court: May a licensed attorney who is a full-time employee of an insurance company ethically represent one of the company's insureds as counsel of record in an action brought by a third party for a claim covered by the terms of the insurance policy or appear as counsel of record for the insured in the prosecution of a subrogation claim for property damage? We hold that under North Carolina law, the answer is no.

Petitioners[1] presented this question to respondent Bar on 13 January 1982 with a request that the Bar reconsider two of its ethics opinions, Opinion 682 and CPR 19. Opinion 682, issued in 1969, held that it would be unethical for "house counsel" of an insurance company to defend that company's insureds against claims arising out of automobile accidents. CPR 19, issued in 1974, held that prosecution of subrogation claims in the name of the insured by "house counsel" would also be unethical. The Bar responded to petitioners' request by reconsidering these earlier opinions and then affirming them in CPR 326, adopted 14 January 1983.

Considering CPR 326 to be a declaratory ruling as defined by N.C.G.S. § 150A-17, petitioners filed a petition for judicial review with the Superior Court, Wake County, on 11 February 1983.

---

1. The individual petitioner, Gardner, is an attorney licensed to practice law in North Carolina who is employed by corporate petitioner Nationwide on a full-time basis.

Both parties submitted memoranda and presented oral arguments to the trial judge. On 21 August 1984, the trial judge entered judgment, out of session by consent of the parties, in favor of petitioners. The trial judge held that the distinction made by the Bar between "house" and "outside independent" counsel was an arbitrary distinction and therefore unlawful.

Respondent Bar accordingly filed a timely notice of appeal, and petitioned this Court for leave to bypass the Court of Appeals. This Court granted the Bar's petition on 30 January 1985.

[1] We note initially that petitioners' reliance on the Administrative Procedure Act (N.C.G.S. § 150A-1 *et seq.*)[2] for authority to bring their petition before the superior court raises a jurisdictional problem. The Administrative Procedure Act allows a party aggrieved by an agency's declaratory ruling (N.C.G.S. § 150A-17), or final decision in a contested case (N.C.G.S. § 150A-43), to bring the matter before the Superior Court, Wake County, for judicial review. N.C.G.S. § 150A-45 (1983). Without deciding the general applicability of the Act to the State Bar and the decisions of its Council, this Court, in *N.C. State Bar v. Du-Mont*, 304 N.C. 627, 286 S.E. 2d 89 (1982), held that Article 4 of the Act would provide the standard of review applicable to decisions of the Disciplinary Hearing Commission.

Nevertheless, in this particular case we need not rely upon the Administrative Procedure Act to find jurisdiction. Instead, we conclude that jurisdiction to decide the question now before us arises out of the court's inherent power to deal with its attorneys. As this Court explained in *In re Burton*, 257 N.C. 534, 542-43, 126 S.E. 2d 581, 587-88 (1962), " '[This] power is based upon the relationship of the attorney to the court and the authority which the court has over its own officers to prevent them from, or punish them for, committing acts of dishonesty or impropriety calculated to bring contempt upon the administration of justice.' " (Citation omitted.) While we agree with the statement in *McMichael v. Proctor*, 243 N.C. 479, 485, 91 S.E. 2d 231, 235 (1956), that "questions of propriety and ethics are ordinarily for the consideration of the . . . Bar" because that organization was expressly created

---

2. Chapter 150A has been amended and recodified as Chapter 150B, effective 1 January 1986.

by the legislature to deal with such questions, nevertheless the power to regulate the conduct of attorneys is held concurrently by the Bar and the court. The legislation creating and empowering the State Bar expressly states that it does not abridge or disable the court's inherent powers to deal with its attorneys. N.C.G.S. § 84-36 (1985). Therefore, in a proper case, the court may rule on questions concerning the conduct of attorneys. The question presented by the petitioners in this case is of sufficient importance to warrant the superior court's consideration.

[2] CPR 326 as recommended by the Ethics Committee and adopted by the Council of the North Carolina State Bar provides in part as follows:

It would be unethical for a full time salaried employee of an insurance company, who is an attorney licensed to practice in the State of North Carolina, to appear as counsel of record in an action brought against an insured by a third party for a claim covered by the terms of the insurance policy or to appear in the prosecution of subrogation claims for the property damage unless such actions are defended or prosecuted only in the name of the insurance company and the insurance company assumes or is subrogated to the complete legal liability and pecuniary interest of the claim. Independent counsel must be retained for the insured when he is the named defendant or plaintiff and thereby the real party in interest. See G.S. 1-57.

This reconsideration affirms Opinion 682 and CPR 19 and those decisions' premise that it is unethical to engage in the unauthorized practice of law as proscribed by G.S. 84-5 . . . .

Protecting and preserving the relationship of the attorney to his client and the court and avoiding professionally reprehensible conflicts of interest also prohibit this manner of legal representation.

The attorney's paramount responsibility is to the court and client which he serves before the court. This responsibility should not be influenced by any other entity. When an attorney, who is employed by a corporation, is directed by his employer in the representation of other individual litigants, he is subject to the direct control of his employer, which is

not itself the litigant and which is not itself subject to strict professional discipline as an officer of the court. This diluted responsibility to the court and the client must be avoided.

The Bar gave two reasons for its decision. First, it concluded that allowing attorney-employees to represent insureds would violate the ban on the practice of law by corporations. Second, it reasoned that the proposed practice would result in an increased risk of conflicts of interest that the Bar considered unacceptable.

In considering the Bar's first reason, the trial judge found as follows:

> Ethics Opinion 682 and CPR 19 each prohibited appearance by . . . full time salaried employee[s] of an insurance company . . . on the basis that such appearance . . . would constitute an unauthorized practice of law by an insurance company.
>
> . . . .
>
> There is no case decided by the Appellate Courts of North Carolina directly on point with the issues raised in this case. Because of the substantial financial interest of the insurer in such actions the insurer is in effect representing itself when its House Counsel represents its insured. This does not appear to be in conflict with established law in this State . . . .

We agree with respondent Bar that the trial judge erred in his conclusion.

The practice of law is defined in North Carolina as "performing any legal service for any other person, firm or corporation, with or without compensation . . . ." N.C.G.S. § 84-2.1 (1985). A corporation may not perform legal services for others; N.C.G.S. § 84-5 forbids it to do so. "It shall be unlawful for any corporation to practice law or appear as an attorney for any person in any court in this State . . . ." N.C.G.S. § 84-5 (1985). *See also State ex rel. Seawell v. Carolina Motor Club, Inc.*, 209 N.C. 624, 184 S.E. 540 (1936). The question at hand is whether an appearance by one of petitioner corporation's employees on behalf of an insured would constitute a prohibited appearance by the corporation.

The first point of inquiry is whether the corporation would be making an appearance at all. We believe that it would. When a corporation's employees perform legal services for the corpora-

tion in the course of their employment, their acts have been held to be the acts of the corporation so that in law, the corporation itself is performing the acts. *State v. Pledger*, 257 N.C. 634, 127 S.E. 2d 337. Pledger, a layman, was convicted of violating the statute against the unauthorized practice of law when he prepared legal documents for his corporate employer. This Court decided that Pledger was not guilty, concluding that, "[A] person who, in the course of his employment by a corporation, prepares a legal document in connection with a business transaction in which the corporation has a primary interest, the corporation being authorized by law and its charter to transact such business, does not violate the statute, for his act in so doing is the act of the corporation in the furtherance of its business." *Id.* at 637, 127 S.E. 2d at 339-40. Here, petitioner Nationwide is proposing to send its employees into court in connection with a matter in which it alleges it has a primary interest. Such employees, acting in the course of their employment by the corporation, would be charged with representing its insureds as part of their job for Nationwide. Their acts would thereby be the acts of Nationwide itself. *Cf. Rucker v. Hospital*, 285 N.C. 519, 206 S.E. 2d 196 (1974) (hospital liable for staff physician's malpractice based on employer-employee relationships).

The second point of inquiry is whether the corporation's appearance would be a prohibited one.

Both petitioners and amicus Insurance Trade Associations argue that the appearance is not prohibited because the corporation would in essence be appearing for itself. We recognize that insurance companies have an interest in the outcome of litigation when the damages sought are covered by their policies. Companies providing automobile insurance are required by statute to pay such damages directly. N.C.G.S. § 20-279.21(f) (1984). Amicus Insurance Trade Associations argues that *State v. Pledger*, cited above, supports its contention that an insurance company's appearance on behalf of an insured is not prohibited. It reads *Pledger* as drawing "a bright line between those matters in which a corporation has a significant interest and those matters in which it does not."

The decision in *Pledger* does speak in terms of allowing employees to prepare legal documents for a corporation when the

corporation has a "primary" interest in the transaction. *Pledger*, 257 N.C. at 637, 127 S.E. 2d at 339. However, what the Court in *Pledger* meant and what petitioners here mean by "primary interest" are not the same. A close reading of *Pledger* discloses that in the examples given by the Court, the corporation or individual preparing the legal documents was a party to the transaction. Even if petitioners were correct, however, *Pledger* is not authority for the proposition that a corporation may appear in court for someone else.

If an insurance company, through its employees, appears for an insured, it would be appearing as an attorney for someone else. The company itself is not the party to the action. The insured is the one who is named. Any judgments rendered are rendered against the insured, not against the company. The insured's property becomes subject to attachment to pay such judgment, and he may be called upon to do so if the company fails. Nor are the interests of the insurance company and the insured identical. The insured is solely responsible for any damages in excess of his insurance coverage, and he alone feels the effect of any collateral penalties that result from the litigation.

Because the insurance company's appearance in court is therefore on behalf of a "person," this appearance falls within the ban of N.C.G.S. § 84-5. The fact, much urged by petitioners and amicus Insurance Trade Associations, that the employees Nationwide proposes to use for this purpose are all licensed attorneys, does not change the situation. "Since a corporation cannot practice law directly, it cannot do so indirectly by employing lawyers to practice for it." *State ex rel. Seawell v. Carolina Motor Club*, 209 N.C. at 631, 184 S.E. at 544.

*Motor Club* stands for the broad proposition that a corporation cannot perform legal services for others. Petitioners argue that the case is distinguishable on various grounds from the practice they propose. In *Motor Club*, defendants Carolina Motor Club and the American Automobile Association advertised that through their legal department they would give advice to members on legal questions about automobiles, assist in the collection of damages out of court, and furnish representation to members in criminal cases. The trial judge found that these practices con-

stituted the unauthorized practice of law under a predecessor to N.C.G.S. § 84-5, and this Court affirmed.

Both petitioners and amicus Insurance Trade Associations argue that *Motor Club* can be distinguished because defendants in that case had no direct interest in the outcome of the activities in which they were engaged. Amicus states baldly that the *Motor Club* decision "merely stands for the proposition that a corporation cannot perform legal services for others when, like the Motor Club, it has no interest in a particular transaction or proceeding." In fact, the *Motor Club* opinion itself makes no reference to the defendants' lack of an interest. Accordingly, the opinion cannot stand for the proposition urged by petitioners that while a corporation cannot practice law for others for its own profit, it can do so with impunity to prevent a loss. Even if the case could so stand, N.C.G.S. § 84-5 still prohibits either practice.

Defendants in *Motor Club* conducted their activities partly through employees and partly through independent counsel. Petitioners quite correctly state that the Court made no distinctions between the two methods in forbidding defendants' activities. Petitioners emphasize that insurance companies have without objection hired independent counsel to represent insureds in this State for many years. No one appears to think they are thereby engaged in the unauthorized practice of law. They argue that their interest in the outcome of the litigation is what distinguishes them from defendants in *Motor Club*. If their current practice does not contravene N.C.G.S. § 84-5, they see no compelling reason why they cannot use salaried attorney-employees to accomplish the same purpose.

The distinction between petitioners' current and proposed practices and defendants' actions in *Motor Club* lies in the character of the performer of the services. In *Motor Club*, the corporate defendants themselves purported to supply legal services. The fact that a club sometimes did so through independent counsel was irrelevant when the club itself was the "actor." Similarly, the insurance corporation would be the "actor" in petitioners' proposed practice for the reasons we have already discussed. In petitioners' current practice, as described to this Court, it does not purport to defend or represent its insureds itself. It agrees to furnish a defense and carries out its obligation by paying an inde-

pendent attorney, assumed for the purpose of this opinion to be an independent contractor, to represent its insureds. It also has certain contractual rights, supported by its pecuniary interest, to select this attorney and to have some control over the suit. Nevertheless, the independent attorney is the "actor" who provides legal representation for the insured.

Petitioners and amicus Insurance Trade Associations also argue that other jurisdictions have not found their proposed practice to be the unauthorized practice of law. They urge this Court to consider the authority of these jurisdictions persuasive. Petitioners and their amicus cite two types of authority from other jurisdictions: case law and opinions of state bars. We note that in all of the cases cited, the courts based their decisions upon their own statutes defining the unauthorized practice of law and that these statutes as reported therein are not identical with our N.C.G.S. § 84-5. *See Coscia v. Cunningham,* 250 Ga. 521, 299 S.E. 2d 880 (1983); *Kittay v. Allstate Insurance Co.,* 78 Ill. App. 3d 335, 397 N.E. 2d 200 (1979); *Strother v. Ohio Casualty Co.,* 28 Ohio Abs. 550 (C.P. 1939). Indeed, some states have specific statutory exceptions for insurance companies. *See Kittay v. Allstate Insurance Co.,* 78 Ill. App. 3d 335, 397 N.E. 2d 200; *see also Utilities Ins. Co. v. Montgomery,* 134 Tex. 640, 138 S.W. 2d 1062 (1940). Petitioners submitted three bar opinions giving an unauthorized practice of law analysis. Like the courts, two of the three based their conclusions upon their states' statutes. Neither statute appears identical to ours. The Bar in the third state, New Jersey, based its conclusion upon the American Bar Association's Formal Opinion 282 (1950), which opined that because of identity of interest between insured and insurer, the insurer would not be engaged in the unauthorized practice of law.

While we certainly agree with petitioners and their amicus that the ABA's opinions are entitled to respect, we believe that our duty is to interpret our own state's law according to the policies expressed by our legislature and the best interests of our state. In the first instance, and absent constitutional restraint, questions as to public policy are for legislative determination. *Martin v. Housing Authority,* 277 N.C. 29, 175 S.E. 2d 665 (1970). We agree with respondent Bar and amicus North Carolina Bar Association that North Carolina has a strong policy favoring personal representation, a policy not necessarily endorsed by other

states. For example, as long ago as 1930, the Missouri Supreme Court commented:

> A generation ago the lawyer was identified with every phase of a person's fortune. He protected him in his reckless youth, he passed upon title deeds to the new home acquired at manhood, he drew up documents relating to his business, collected the accounts, drew the will, handled the settlement of the estate, and then repeated the process with a new generation; whereas, today, the defense of reckless youth falls to the insurance company — a title company passes on the deed to the new home — a charter company incorporates the business — credit insurance companies, trade associations and collection agencies collect the accounts — and a trust company writes the will and administers the estate.

*Liberty Mutual Insurance Co. v. Jones*, 344 Mo. 932, 959, 130 S.W. 2d 945, 956 (1930). Our state legislature, on the other hand, continues to require that individuals, not corporations, perform many of these activities. *See* N.C.G.S. § 58-132(a) (1982) (title certification). *See also* N.C.G.S. § 84-5 (1985) (requiring corporations authorized and licensed to act as fiduciaries to obtain independent attorneys for certain specified activities often considered part of a fiduciary's job); *cf. State Bar Association of Connecticut v. Connecticut Bank & Trust Co.*, 20 Conn. Supp. 248, 131 A. 2d 646 (Conn. Super. Ct. 1957), *modified in part and rev'd in part*, 145 Conn. 222, 140 A. 2d 863 (1958); *Groniger v. Fletcher Trust Co.*, 220 Ind. 202, 41 N.E. 2d 140 (1942), and *Judd v. City Trust and Savings Bank*, 133 Ohio St. 81, 12 N.E. 2d 288 (1937) (all holding that because corporate fiduciaries could perform any tasks that individual fiduciaries could perform, they could use either "house" or independent counsel). We also note that respondent Bar had the benefit of the ABA's opinion when it issued its earlier opinions.

To summarize, we agree with respondent Bar that petitioners' proposed practice of allowing employees, in the course and scope of their employment, to represent insureds would constitute the unauthorized practice of law as defined by N.C.G.S. § 84-5. CPR 326 was therefore not based upon an arbitrary distinction and is consequently not unlawful.

Because we have decided that the first ground set forth in CPR 326 for disapproving petitioners' proposed practice was correct, we need not reach the second.

[3] In their final argument, petitioners contend that CPR 326 violates Article I of the North Carolina Constitution and the Fourteenth Amendment of the United States Constitution by allegedly preventing the individual petitioner Gardner from practicing law by denying him the right to appear before a court. There is no merit to this argument. Petitioner Gardner is only prevented from representing his employer's insureds. He may freely appear in court to represent Nationwide itself. As an attorney licensed to practice law in North Carolina, he may also represent other parties desirous of his services so long as he does not do so in conjunction with Nationwide; if he chooses by contract to devote his entire time to Nationwide's affairs, he cannot be heard to complain.

In conclusion, the decision of the Superior Court, Wake County, is reversed, and this case is remanded to that court for entry of judgment not inconsistent with this opinion.

Reversed and remanded.

Justice BILLINGS did not participate in the consideration or decision of this case.