THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA STATE BOARD. OF EDUCATION; AND BOB ETHERIDGE, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, PLAINTIFFS v. WHITTLE COMMUNICATIONS AND THE THOMASVILLE CITY BOARD OF EDUCATION, DEFENDANT-COUNTERCLAIMANTS, AND THE DAVIDSON COUNTY BOARD OF EDUCATION, DEFENDANT-INTERVENOR AND COUNTERCLAIMANT v. THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA STATE BOARD OF EDUCATION; AND BOB ETHERIDGE, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION; AND HOWARD S. HAWORTH; BARBARA M. TAPSCOTT; KENNETH R. HARRIS; TEENA SMITH LITTLE; W. C. MEEKINS, JR.; MARY B. MORGAN; PATRICIA H. NEAL; CARY C. OWEN; DONALD D. POLLOCK; PREZELL R. ROBINSON; NORMA B. TURNAGE; STATE TREASURER HARLAN E. BOYLES; AND LT. GOVERNOR JAMES C. GARDNER; IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE NORTH CAROLINA STATE BOARD OF EDUCATION, COUNTERCLAIM DEFENDANTS

No. 164PA90

(Filed 3 April 1991)

1. **Courts § 5 (NCI4th)— subject matter jurisdiction—complaint dismissed—harmless error**

    The trial court's error in dismissing a complaint for lack of subject matter jurisdiction was harmless where the court correctly adjudicated the issues before it prior to deciding to dismiss the complaint.

    **Am Jur 2d, Courts § 105.**

2. **Schools § 4.1 (NCI3d)— commercial news program—supplementary instructional materials—authority of State Board of Education**

    The trial court did not err by holding that a temporary rule adopted by the State Board of Education was not binding on defendant Thomasville, which had already accepted a contract with defendant Whittle for a news program which included commercial advertising, because the General Assembly placed the procurement and selection of supplementary instructional materials under the control of local school boards. Moreover, amendments to N.C.G.S. § 115C-98(b) have removed any doubt by providing that local school boards have the authority to contract for materials containing commercial advertising without the approval of the State Board.

    **Am Jur 2d, Schools §§ 5-7.**

STATE v. WHITTLE COMMUNICATIONS

[328 N.C. 456 (1991)]

3. **Constitutional Law § 28 (NCI4th) — schools — commercial news program — not unconstitutional**

A contract under which a news program with commercial advertising was supplied to public schools by a private company did not violate Article V, § 2(1) of the North Carolina Constitution, which provides that the power of taxation shall be used for public purposes only, where plaintiffs' premise that tax money was being spent to subsidize private business was incorrect in that the contract provided that defendant Whittle would furnish all of the equipment necessary to show the program; the school system provides only records of the number of days the program is shown and the number of students watching; and the money spent for running buses and paying teachers is the same amount that would be spent if the local school board did not enter into the contract.

**Am Jur 2d, Schools §§ 91, 95.**

4. **Schools § 2 (NCI3d) — commercial news program — not unconstitutional**

A contract under which defendant Whittle provided a news program with commercial advertising to schools did not violate Article IX, § 2(1) of the North Carolina Constitution, which provides for a general and uniform system of free public schools. Plaintiffs' argument that students are made to pay for the contract through their time spent watching the program was not convincing.

**Am Jur 2d, Schools §§ 91, 95.**

5. **Schools § 1 (NCI3d) — commercial news program — no violation of public policy**

The trial court did not err by declaring that a contract under which a news program with commercial advertising was provided to schools did not violate public policy. The legislature has given local school boards the authority to enter into contracts for supplemental instructional materials which involve commercial advertising without seeking approval of the State Board of Education. N.C.G.S. § 115C-98(b); N.C.G.S. § 115C-47(33).

**Am Jur 2d, Schools §§ 91, 95.**

Justice MARTIN dissenting.

Chief Justice EXUM joins in this dissenting opinion.

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to a determination by the Court of Appeals of an order dismissing plaintiffs' complaint entered on 8 March 1990 by *Stephens, J.*, at the 26 February 1990 Session of Superior Court, WAKE County. Heard in the Supreme Court 10 October 1990.

*Lacy H. Thornburg, Attorney General, by Edwin M. Speas, Jr., Senior Deputy Attorney General, and Laura E. Crumpler, Assistant Attorney General, for the State.*

*Hunton & Williams, by John R. McArthur, for Whittle Communications; Russell W. Batten for Thomasville City Board of Education; and Brinkley, Walser, McGirt, Miller, Smith & Coles, by Walter F. Brinkley, for Davidson County Board of Education.*

*George T. Rogister, Jr., and Rod Malone for North Carolina School Boards Association, Amicus Curiae.*

FRYE, Justice.

Plaintiffs bring this appeal from the order by Judge Stephens filed on 8 March 1990 which, among other things, granted defendants' motion to dismiss plaintiffs' complaint under Rule 12(b)(6), decided *ex mero motu* that plaintiffs' complaint was dismissed for lack of subject matter jurisdiction, and declared that the contracts at issue are not invalid, unlawful, or otherwise unenforceable under North Carolina law. Plaintiffs raise three issues on appeal dealing with the constitutionality of the contracts between defendant Whittle Communications, L.P. (Whittle), and the various local school boards, as well as the validity of the temporary rule adopted by the State Board of Education concerning these contracts. We conclude that the State Board of Education did not have the authority to enact the temporary rule concerning the Whittle contracts because these contracts involve the selection and procurement of supplementary materials, an area which the General Assembly has specifically placed under the control and supervision of the local school boards. We further conclude that these contracts do not violate the North Carolina Constitution or the public policy of North Carolina.

Whittle, one of the defendants in this case, is a limited partnership which writes, publishes, and distributes, among other things, educational publications. In 1988, Whittle developed a short video news program, known as *Channel One*, which was designed to keep students informed on current affairs. *Channel One* would be

provided on a daily basis to the school systems which contracted with Whittle. The daily program is twelve minutes long, and two of the twelve minutes are commercial advertising. All of the video equipment needed to show the program is given to the contracting school systems to use for the duration of the system's contract with Whittle.

Under the contract, *Channel One* would be broadcast to the individual schools at 6:00 a.m. each morning, and a staff member or committee at the school would preview the program to see if it was appropriate to be shown to the students. If appropriate, the program would be shown in its entirety during the school day. Students who do not wish to view the program would be allowed to do something else while the program was being shown to the rest of the school. The contract further provides that the program must be shown at the same time each school day and must be shown at least ninety-five per cent (95%) of the number of days on which the school is in session and the program is available in any calendar quarter. The contract requires the schools to keep detailed records as to when the program is shown and how many students are watching it.

Whittle made a presentation concerning *Channel One* to officials at the State Department of Public Instruction in July 1989 and began to make presentations to local school boards in the fall of 1989. The Davidson County Board of Education (Davidson), an intervenor defendant in this action, entered into a contract with Whittle on 29 January 1990, and the Thomasville City Board of Education (Thomasville), a defendant in this action, entered into a contract with Whittle on 8 February 1990.

The State Board of Education discussed *Channel One* at its regular January meeting and decided that it needed additional time to study the matter before its February meeting. On 1 February 1990, the State Board of Education adopted a temporary rule prohibiting local school boards from entering into a contract which

(1) Limits or impairs its authority and responsibility, or the authority and responsibility of administrators and teachers, to determine the materials to be presented to students during the school day; or

(2) Limits or impairs its authority and responsibility or the authority and responsibility of administrators and teachers,

> to determine the times during the school day when materials will be presented to students.

N.C. Admin. Code tit. 16, r. 6D .0105 (February 1990). The rule further provided:

> (b) Local boards of education are obligated to assure that students, as a consequence of the compulsory attendance laws, are not made a captive audience for required viewing, listening to, or reading commercial advertising. Therefore, no local board of education may enter into any contract or agreement with any person, corporation, association or organization, pursuant to which students are regularly required to observe, listen to, or read commercial advertising.

*Id.*

When this temporary rule was adopted, the State Board of Education decided that it would not be made retroactive to existing contracts; rather the rule would prohibit new contracts and the renewal of the existing contracts. The Superintendent of Public Instruction forwarded a copy of the new rule along with appropriate certification to the Office of Administrative Hearings (OAH) as a temporary rule effective immediately.

On 15 February 1990, the Administrative Rules Review Commission (Commission) met and considered the temporary rule passed by the State Board of Education on 1 February 1990. This Commission wrote a letter dated 16 February 1990 to the State Board of Education informing the Board that the Commission objected to the temporary rule "due to a lack of authority for use of the temporary rulemaking procedure and lack of statutory authority for the rule." The Commission explained further that the State Board did not have the authority to make this temporary rule because "the execution of the commercial contracts prohibited by the rule did not pose either a serious or unforeseeable threat to public welfare."

Defendant Thomasville signed a contract with Whittle, as noted earlier, on 8 February 1990, which was after the State Board of Education had enacted its temporary rule prohibiting new contracts after 1 February 1990. In a special session on 19 February 1990, the State Board of Education met and voted to amend the rule adopted 1 February 1990 in order to make the rule retroactive to existing contracts. The Superintendent of Public Instruction filed

this amendment and proper certification with the OAH as a temporary rule effective immediately.

On 19 February 1990, the State Board of Education voted to file this action against Whittle and Thomasville. The Superintendent of Public Instruction and the State of North Carolina joined the State Board of Education in filing this action which asked the court to declare void and unenforceable the contract entered into by Whittle and Thomasville on the grounds that the contract was contrary to the rules adopted by the State Board of Education, was contrary to public policy, and violated the North Carolina Constitution. The complaint filed by plaintiffs further sought to enjoin Thomasville and Whittle from implementing their contract and to enjoin Whittle from contracting with other local school boards in North Carolina.

On 19 February 1990, the State Board of Education also filed a motion for a temporary restraining order enjoining defendants from implementing the contract made by them on 8 February 1990. The motion for the temporary restraining order was granted that same day with a hearing on a preliminary injunction set for 1 March 1990. The 19 February 1990 order granting the temporary restraining order was vacated in an order filed 26 February 1990 because the original order failed to comply with Rule 65 of the Rules of Civil Procedure.

Whittle and Thomasville filed answers and counterclaims on 23 February 1990. The counterclaim asked: (1) that the court declare the contract executed by Whittle and Thomasville to be valid and enforceable; (2) that the court declare the action of the State Board of Education in adopting the temporary rule on 1 February 1990 and amending it on 19 February 1990 to be unlawful, unconstitutional, and in violation of the State Board's own rules; and (3) that the court permanently enjoin the State Board of Education from enforcing this rule. Davidson filed a motion to intervene in this action as a defendant-counterclaimant, and this motion was allowed without objection.

On 16 February 1990, Thomasville and Whittle filed a verified petition for a contested case hearing and application for stay of agency action, temporary restraining order, and preliminary injunction with the OAH. These parties filed an amended verified petition for a contested case hearing, application for stay of agency action, and preliminary injunction on 27 February 1990. On 28 February

1990, plaintiffs filed a petition in superior court for writ of certiorari and writ of supersedeas and a motion to consolidate the administrative proceeding with the complaint which was filed on 19 February 1990. Defendants Thomasville and Whittle filed a response to plaintiffs' motion asking that the superior court deny plaintiffs' motion since jurisdiction of this matter had already attached in the OAH. These matters were all consolidated and were the subject of Judge Stephens' March 1990 order from which plaintiffs now appeal.

The 8 March 1990 order adjudged and decreed:

(1) Defendant-Counterclaimants' motion to dismiss the Complaint under Rule 12(b)(6) is allowed; and, the Court on its own motion dismisses the Complaint and the counterclaim under Rule 12(b)(1) for lack of subject matter jurisdiction.

(2) Plaintiffs' petition for certiorari to review Administrative Law Judge Gray's February 27, 1990 order is allowed and such order is vacated.

(3) Upon Judicial Review under G.S. § 150B, Article 4, of the validity of the temporary rule of February 1, 1990, as amended and promulgated by the North Carolina State Board of Education, the Court holds such rule to be invalidly adopted in violation of the provisions of Article 2, G.S. § 150B and declares such rule to be void.

(4) The Court concludes that the contracts which are the subject of these proceedings are not invalid, are not unlawful and are not otherwise unenforceable under North Carolina law.

Plaintiffs filed notice of appeal to the Court of Appeals on 8 March 1990 and then filed a petition on 24 April 1990 with this Court for discretionary review prior to determination by the Court of Appeals. This petition was allowed on 10 May 1990. Plaintiffs raise three issues in this appeal: (1) whether the trial court erred in determining *ex mero motu* that it lacked subject matter jurisdiction over the complaint; (2) whether the trial court erred in failing to find that Whittle's contract is contrary to public policy and the North Carolina Constitution and therefore void; and (3) whether the trial court erred in holding that rules adopted by the State Board of Education on 1 February 1990 were not binding on defendant Thomasville. We conclude that the State Board of

Education did not have the authority to promulgate a temporary rule governing this contract because the contract involves supplementary materials, an area which the General Assembly has delegated to the local school boards to oversee. *See* N.C.G.S. § 115C-98(b) (1987). We further conclude that this contract does not violate the North Carolina Constitution and is not contrary to public policy.

[1]   We first address plaintiffs' contention that the trial court erred in determining *ex mero motu* that it lacked subject matter jurisdiction over the complaint. In their complaint plaintiffs sought the aid of the court in enforcing the State Board's rules and also sought a declaration that certain contracts were void and unenforceable as against public policy and the North Carolina Constitution. Clearly the superior court is the proper forum for resolving the matters set forth in the complaint. *See* N.C.G.S. § 7A-245 (1989). There is no requirement that the agency must exhaust any administrative remedies before seeking the court's help in enforcing an administrative rule adopted by that agency or in seeking a declaration that contracts adopted in violation of the agency's rule are contrary to public policy or the constitution. Thus, we agree with plaintiffs that the trial court erred in dismissing the complaint on grounds that the court lacked subject matter jurisdiction. However, a review of the remaining conclusions in the trial court's order clearly demonstrates that the trial court correctly exercised subject matter jurisdiction over plaintiffs' complaint and decided the issues raised before it. Thus, plaintiffs received what they sought — a full adjudication of the issues raised in the complaint — and the trial court's error in dismissing for lack of subject matter jurisdiction had no effect on plaintiffs. Since the trial court correctly fully adjudicated the issues before it prior to deciding to dismiss the complaint for lack of subject matter jurisdiction and these issues are now properly before us on appeal, the trial court's error was harmless.

[2]   We now turn to issue three in which plaintiffs contend that the trial court erred in holding that the temporary rule adopted by the State Board of Education on 1 February 1990 was not binding on defendant Thomasville. Plaintiffs contend the trial court incorrectly concluded both that the State Board of Education is subject to the Administrative Procedure Act (APA) found in N.C.G.S. § 150B and that the State Board of Education's actions in adopting the temporary rule on 1 February 1990 did not comply with the specific requirements for promulgating a temporary rule found in

N.C.G.S. § 150B-13. Plaintiffs assert that this temporary rule was promulgated under the authority granted to the State Board of Education by art. IX, § 5, of the North Carolina Constitution which provides in part:

> The State Board of Education shall supervise and administer the free public school system . . . and shall make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly.

N.C. Const. art. IX, § 5. Plaintiffs cite *Guthrie v. Taylor*, 279 N.C. 703, 185 S.E.2d 193 (1971), for the proposition that where the General Assembly has not acted to limit the power of the State Board to adopt rules on a particular subject this power is limited only by other provisions in the Constitution. According to plaintiffs, the APA rulemaking requirements only apply to rules implementing statutes, and the temporary rule promulgated on 1 February 1990 was not implementing a statute; rather the rule was implementing the North Carolina Constitution's grant of authority to the State Board found in art. IX, § 5. However, we do not have to decide whether plaintiffs' assessment is correct because at the time this temporary rule was promulgated, N.C.G.S. § 115C-98(b) was in effect and directly spoke to this issue.

Article IX, § 5 of the North Carolina Constitution, which grants the State Board the authority to "make all needed rules," also limits this authority by making it "subject to the laws enacted by the General Assembly." Thus, we must examine our statutes to ascertain whether the General Assembly has enacted laws which would limit the power of the State Board in the area of selection of materials such as *Channel One* which we conclude is a supplementary instructional material. To fully answer this question, we look to the statutory treatment of selection and procurement of supplementary instructional materials.

In 1969, the General Assembly enacted chapter 519 entitled "AN ACT TO AMEND AND REVISE ARTICLES 25 and 26 OF CHAPTER 115 OF THE GENERAL STATUTES TO AUTHORIZE COUNTY AND CITY BOARDS OF EDUCATION TO PROVIDE FOR THE SELECTION AND PROCUREMENT OF SUPPLEMENTARY TEXTBOOKS, LIBRARY BOOKS, PUBLICATIONS, AND OTHER INSTRUCTIONAL MATERIALS FOR THE PUBLIC SCHOOL

SYSTEM." 1969 N.C. Sess. Laws ch. 519, § 1.[1] Chapter 519 created Article 25A entitled "TEXTBOOKS AND INSTRUCTIONAL MATERIALS," which outlined the procedures to be used for the adoption of textbooks and supplementary instructional materials. A fair reading of the statutory scheme reveals that while local school boards may only select textbooks from a list approved by the State Board, the selection of supplementary instructional materials is left entirely to the discretion of local school boards. In the preamble to chapter 519, the General Assembly provided an explanation for the adoption of Article 25A. As for the selection of supplementary materials, this preamble specifically provided: "it is desirable that the selection of supplementary instructional materials be made by each school administrative unit . . . ." *Id.*

With only minor differences, N.C.G.S. § 115-206.14(b), which was codified in 1969 in chapter 519, is identical to N.C.G.S. § 115C-98(b) which was in effect at the time the State Board of Education enacted the temporary rule in question. Section 115C-98(b) provides in part:

> Local boards of education shall adopt written policies concerning the procedures to be followed in their local school administrative units for the selection and procurement of supplementary textbooks, library books, periodicals, and other instructional materials needed for instructional purposes in the public schools of their units.

N.C.G.S. § 115C-98(b) (1987). When N.C.G.S. § 115-206.14(b) was enacted, the General Assembly also enacted § 115-206(13), presently found at § 115C-97, which authorized the State Board of Education to discontinue handling supplementary books and other supplementary instructional materials. *See* N.C.G.S. § 115C-97 (1987).

As noted earlier, chapter 519, which was codified as Article 25A of the General Statutes, set out the procedures for adoption

---

1. We note that chapter 519 of the 1969 Session Laws created Article 25A of the General Statutes, codified as N.C.G.S. § 115-206.1 *et seq.* The 1981 General Assembly recodified all of Chapter 115 of the General Statutes. *See* 1981 N.C. Sess. Laws ch. 423, § 1. The statutes relevant to this appeal were first enacted in 1969, and their language remained virtually unchanged by the recodification in 1981. Rather than including parallel citations to both the 1969 version and the 1981 recodification of the statutes, we will only include a citation to the version in effect when this action was brought and provide reference in the text of the opinion to the 1969 version enacted by chapter 519.

of textbooks as well as supplementary instructional materials. The General Statutes clearly provide that the State Board of Education is to adopt textbooks. *See* N.C.G.S. § 115C-86 (1987). Section 115-106.14(a), now codified at § 115C-98(a), directed the local school boards to adopt rules and regulations concerning the local operation of the textbook program, but these rules and regulations were not to be "inconsistent with the policies of the State Board of Education concerning the local operation of the textbook program." N.C.G.S. § 115C-98(a) (1987).

The General Statutes do not contain a similar direction to the State Board of Education for the adoption of supplementary instructional materials. The only statute which speaks to this issue is N.C.G.S. § 115C-98(b) which directs each local school board to adopt "written policies concerning the procedures" used in the adoption of supplementary instructional materials in its own unit. N.C.G.S. § 115C-98(b) (1987). Furthermore, this statute contains no limitation on the local school boards' directive to adopt these written policies on supplementary instructional materials similar to the limitation concerning the local adoption of rules dealing with the local operation of the textbook program found in § 115C-98(a). The only limitation found in section (b) of the statute concerning supplementary instructional materials is that these "materials shall neither displace nor be used to the exclusion of basic textbooks." N.C.G.S. § 115C-98(b) (1987). Thus, the General Assembly, by adopting chapter 519 in 1969, placed the decision-making process for the selection and procurement of these supplementary instructional materials in the exclusive domain of the local school boards while clearly making the rules adopted by the local boards concerning textbooks subject to the policies of the State Board. This legislative policy of allowing local school boards to have control over the adoption and procurement of supplementary instructional materials has remained undisturbed since its enactment by the General Assembly in 1969.

Since *Channel One* is a supplementary instructional material and since the General Assembly placed the procurement and selection of supplementary instructional materials under the control of the local school boards, the State Board acted in excess of its authority in enacting this rule because the State Board had no authority to enact a rule on this subject. Thus, deciding whether the State Board had the authority, absent legislative action, to enact this rule through direct constitutional authority and deciding

whether the APA provisions concerning the adoption of temporary rules apply are not necessary to a resolution of this issue.

We further note that if there was any doubt as to whether materials which involved commercial advertising in general were included in the provision of § 115C-98(b) as it existed at the time the temporary rule was adopted, the 1990 Session of the North Carolina General Assembly removed the doubt by amending this statute and providing that the local school boards have the authority to contract for materials containing commercial advertising without the approval of the State Board. In its amended form the statute now provides:

(b) Local boards of education shall adopt written policies concerning the procedures to be followed in their local school administrative units for the selection and procurement of supplementary textbooks, library books, periodicals, *audio-visual materials*, and other supplementary instructional materials needed for instructional purposes in the public schools of their units.

*Local boards of education shall have sole authority to select and procure supplementary instructional materials, whether or not the materials contain commercial advertising, to determine if the materials are related to and within the limits of the prescribed curriculum, and to determine when the materials may be presented to students during the school day. Supplementary materials and contracts for supplementary materials are not subject to approval by the State Board of Education.*

Supplementary books and other instructional materials shall neither displace nor be used to the exclusion of basic textbooks.

N.C.G.S. § 115C-98(b) (Cum. Supp. 1990) (emphasis added reflects the 1990 amendments).

Section 115C-47 which enumerates the powers or duties of the local boards of education was also amended by the 1990 Session to add:

(33) Local boards of education shall have sole authority to select and procure supplementary instructional materials, whether

or not the materials contain commercial advertising, pursuant to the provisions of G.S. 115C-98(b).

N.C.G.S. § 115C-47(33) (Cum. Supp. 1990).

These amendments were enacted as a part of the "Capital Improvement Appropriations Act of 1990" and became effective 1 July 1990. *See* 1989 N.C. Sess. Laws (Reg. Sess. 1990) ch. 1074. These amendments clearly provide that the local school boards have the power, without the need of approval of the State Board of Education, to select and contract for supplementary materials, including those which contain commercial advertising such as the contracts at issue in this case. *See* N.C.G.S. § 115C-98(b) and -47(33) (Cum. Supp. 1990). Through these amendments the General Assembly made clear what the statutes already provided — that decisions concerning the procurement of supplementary instructional materials, including those which involve commercial advertising, are to be made exclusively by the local school boards without having to seek approval of the State Board. Thus, the State Board had no authority to make rules regarding supplementary instructional materials, an area which was and still is under the supervision of the local school boards rather than the State Board. Therefore, the trial court did not err in holding that the temporary rule adopted by the State Board on 1 February 1990 was not binding on defendant Thomasville.

[3] We now turn to plaintiffs' remaining issue concerning whether Whittle's contract is void because it violates the North Carolina Constitution and is contrary to public policy. We will first consider plaintiffs' constitutional arguments and then address the public policy argument.

Plaintiffs claim that the contract violates both article V, § 2(1) and article IX, § 2(1) of the North Carolina Constitution. Article V, § 2(1) provides: "[t]he power of taxation shall be exercised in a just and equitable manner, for public purposes only, and shall never be surrendered, suspended, or contracted away." N.C. Const. art. V, § 2(1). Article IX, § 2(1) provides in part: "[t]he General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools." N.C. Const. art. IX, § 2(1).

Plaintiffs contend that the "public purposes only" limitation of article V, § 2(1) is violated when tax dollars are used, directly or indirectly, to subsidize private business. Plaintiffs claim that the Whittle contract violates this public purpose limitation under

STATE v. WHITTLE COMMUNICATIONS

[328 N.C. 456 (1991)]

the North Carolina Constitution because tax dollars are being spent under this contract to further Whittle's business and because the purpose of the contract is to further Whittle's private business and the business of the commercial sponsors of *Channel One*. Plaintiffs claim that tax dollars are being spent to further private enterprise through this contract because tax funds are being spent to pay for buses and gasoline to get the students to school every day and to pay the salaries of the teachers who supervise the students while they watch the program during the school day. Plaintiffs perform some mathematical computations and reach the conclusion that the contract with Whittle is costing taxpayers "roughly four million dollars per school year," based on the amount of time students spend watching the program and the amount of tax money spent to maintain the public schools.

Plaintiffs cite no authority for their contention that this contract results in the expenditure of tax money, and we find no authority which supports their contention. Aside from the money which is spent to furnish the electricity to run the machinery required for showing the *Channel One* program, which would be nothing more than a *de minimis* expenditure, we see no expenditures of tax money for showing the program. The contract provides that Whittle will furnish all of the equipment necessary to show the program, and the school system only provides the records showing the number of days the program is shown and the number of students watching it. The money spent for running buses and paying teachers is the same amount that would be spent if the local school board did not contract with Whittle to show *Channel One*; no further tax money is being expended to support this contract. Thus, plaintiffs' original premise that tax money is being spent to subsidize private business is incorrect. Since no tax money is being spent for the program, article V, § 2(1) is not applicable to this situation, and we need not address whether the expenditure of tax money is for a "public purpose" as required by the North Carolina Constitution. *See* N.C. Const. art. V, § 2(1). Therefore, we conclude that the contract does not violate article V, § 2(1).

[4] Plaintiffs also contend that the contract violates the requirement for a "general and uniform system of free public schools" found in article IX, § 2(1) of the North Carolina Constitution. According to plaintiffs, the equipment provided by Whittle to the schools is not free because students pay for it with the time they spend watching commercial advertising for Whittle's financial benefit

and the benefit of the *Channel One* advertisers. Citing *Sneed v. Greensboro Board of Education*, 299 N.C. 609, 264 S.E.2d 106 (1980), plaintiffs argue that charging students in time rather than in dollars is *per se* an unreasonable charge within the meaning of *Sneed*.

The plaintiffs in *Sneed* contended that the incidental course and instructional fees charged by the local school board violated the constitutional provision requiring free public schools. *Id.* at 612, 264 S.E.2d at 110. This Court concluded that there was "no constitutional bar to the collecting by our public schools of modest, reasonable fees for the purpose of enhancing the quality of their educational effort." *Id.* at 610, 264 S.E.2d at 108. The fees involved in *Sneed* ranged from $4 to $7 per semester, and the Court viewed these fees as "reasonable and their burden *de minimis.*" *Id.* at 617 n.5, 264 S.E.2d at 113 n.5.

*Sneed* does not provide any authority for the proposition that charging students in time is the same thing as charging them in dollars, and plaintiffs provide no authority for their contention that the students are being "charged" to watch *Channel One* by the time they spend watching the program. Furthermore, the contract clearly provides that students are not required to watch the program, and the students do not have to "spend their time" watching the program if they do not wish to do so. Therefore, any comparison to *Sneed* is lost because *Sneed* involved mandatory fees, and watching *Channel One* is not mandatory. We do not find convincing plaintiffs' argument that students are being made to pay for the contract through their time spent in watching the program, and we reject this argument. We conclude that the contract does not violate article IX, § 2(1).

[5] Plaintiffs also contend that the contract violates the public policy of the State and is therefore void. The general rule in North Carolina is that absent "constitutional restraint, questions as to public policy are for legislative determination." *Gardner v. North Carolina State Bar*, 316 N.C. 285, 293, 341 S.E.2d 517, 522 (1986) (citing *Martin v. Housing Authority*, 277 N.C. 29, 175 S.E.2d 665 (1970)). In the present case the legislature spoke specifically to this issue when it amended N.C.G.S. § 115C-98(b) and added N.C.G.S. § 115C-47(33) which were set out earlier in this opinion. Both sections give local school boards the authority, without seeking approval of the State Board of Education, to enter into contracts for supplementary instructional materials which involve commercial

advertising. *See* N.C.G.S. § 115C-98(b) and -47(33) (Cum. Supp. 1990). These amendments are an expression of the legislature regarding the public policy of this State on this matter.

"Whether the public policy established by [these provisions of the statutes] is wise or unwise is for determination by the General Assembly" unless the statute is determined to be unconstitutional. *Martin v. Housing Authority*, 277 N.C. at 41, 175 S.E.2d at 672 (citations omitted). The General Assembly has set the public policy in the present situation so that the State Board of Education does not have any authority over the contracts which local school boards may enter into concerning the purchase of supplementary instructional materials even if these materials involve commercial advertising. In this appeal, plaintiffs have not challenged the constitutionality of these amendments to the statutes, and we have already determined that the contract itself does not violate article V, § 2(1) or article IX, § 2(1) of the North Carolina Constitution. Under these circumstances, we will not second-guess the General Assembly's statement of public policy as set out in these amendments to the statutes. *See Martin v. Housing Authority*, 277 N.C. at 41, 175 S.E.2d at 671-72.

For the reasons set out above, we conclude that the trial court had subject matter jurisdiction over plaintiffs' complaint and did not err in declaring that the Whittle contract does not violate the North Carolina Constitution or public policy. We further conclude that the State Board did not have authority to promulgate the temporary rule of 1 February 1990. For these reasons, we affirm the trial court's order dismissing plaintiffs' complaint.

Affirmed.

Justice MARTIN dissenting.

I respectfully dissent from the majority opinion. There are three basic grounds for my dissent which I shall discuss separately.

I.

Citing N.C.G.S. § 115C-98(b), the majority first holds that the State Board of Education did not have authority to promulgate a temporary rule governing the subject contract with Whittle because the contract involves supplementary instructional materials, an area

STATE v. WHITTLE COMMUNICATIONS

[328 N.C. 456 (1991)]

whose oversight the General Assembly had exclusively delegated to local school boards. I find this to be an erroneous statement of law.

As the majority states, Article IX, section 5 of the Constitution of North Carolina mandates that "The State Board of Education shall supervise and administer the free public school system . . . and shall make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly." The majority then argues that the legislation in N.C.G.S. § 115C-98(b) grants to the local school boards the exclusive authority over supplemental instructional materials needed for the respective schools and therefore the State Board has no authority to promulgate a rule with respect to supplemental instructional materials. N.C.G.S. § 115C-98 reads in pertinent part:

> (b) Local boards of education shall adopt written policies concerning the procedures to be followed in their local school administrative units for the selection and procurement of supplementary textbooks, library books, periodicals, and other instructional materials needed for instructional purposes in the public schools of their units.

This subsection does not grant the local boards of education *exclusive* authority to purchase for their schools all supplementary instructional materials. The statute simply requires the local boards to adopt written policies concerning the procedures to be followed for the selection and procurement of supplementary instructional materials. It in no way grants to the local boards the sole authority with respect to such materials. In truth, the amendment to this statute adopted in 1990 was for the purpose of granting the local boards sole and exclusive authority to procure supplementary instructional materials and does so. If the local boards had this exclusive authority prior to the 1990 amendment, the amendment would indeed have been unnecessary and useless. Even a casual reading of subsection 98(b) as it existed at the time this contract was entered into discloses that this statute simply required that local boards adopt written policies concerning the procedures to be followed in the selection and procurement of such materials; it in no wise granted to the local boards the exclusive and sole authority with respect to such materials. To reach the conclusion desired by the majority it is necessary to interpret the statute contrary to the plain meaning of the words used by the General

Assembly. I find the majority opinion to be in error in adopting this argument.

## II.

Assuming for the purpose of argument that N.C.G.S. § 115C-98(b), as it existed at the time of the execution of the Whittle contract, did grant the local boards sole and exclusive authority over supplemental instructional materials, I do not find that the rule promulgated by the State Board of Education in any way interfered with the exercise of that authority by the Thomasville City Board of Education. The temporary rule adopted by the State Board of Education on 1 February 1990 prohibited any local school board from entering into a contract which

> (a) Limits or impairs its authority and responsibility, or the authority and responsibility of administrators and teachers, to determine the materials to be presented to students during the school day; or

> (b) Limits or impairs its authority and responsibility or the authority and responsibility of administrators and teachers, to determine the times during the school day when materials will be presented to students.

. . .

> 2. Local boards of education are obligated to assure that students, as a consequence of the compulsory attendance laws, are not made a captive audience for required viewing, listening to, or reading commercial advertising. Therefore, no local board of education may enter into any contract or agreement with any person, corporation, association or organization, pursuant to which students are regularly required to observe, listen to, or read commercial advertising.

N.C. Admin. Code tit. 16, r. 6D .0105 (February 1990). Under paragraph (a) of the temporary rule, the State Board of Education prohibited the Thomasville School Board from entering into a contract which impaired its authority and responsibility to determine what materials would be presented to the students during the school day. In other words, this rule prevented the local school board, local school administrators, and teachers from delegating by contract to Whittle the determination of what materials would be presented to the students during the school day. This part

of the rule does not impair the authority of the local school board to procure supplementary instructional materials, but simply prevents the local school board from failing to exercise its duties and responsibilities in determining what materials should be used to educate the students during the school day.

By executing the Whittle contract, the local board delegated to Whittle the determination of what materials would be presented to the students during the twelve minutes when Channel One was to be exhibited to the students. Although a representative of the school could preview the Channel One program each day to determine if it was appropriate to be shown to students, the school was required under the contract to exhibit the program to students at least ninety-five percent of the number of days that school was in session. In effect, the school had no meaningful control over what materials would be used under the Whittle contract. This was in violation of the rule adopted by the State Board of Education and is a sufficient ground to invalidate the Whittle contract. Yet, paragraph (a) in no way infringes upon or impairs the alleged exclusive authority that the local school boards had at the time of the Whittle contract to procure supplementary instructional materials.

Likewise, in paragraph (b) above the State Board of Education by its rule proscribed the local school board from failing to carry out its authority and responsibility to determine the *times* during the school day when materials would be presented to the students. Again, it is the duty of the local school board, administrators, and teachers to determine when during the school day certain educational materials should be presented to the students. Under the Whittle contract, the local board of education *and* Whittle determined the times during the school day that Channel One would be presented to the students. By entering into this contract the local board failed to carry out its duty under the rules issued by the State Board.

In discussing this issue, the majority apparently assumes that N.C.G.S. § 115C-97 authorized the State Board of Education to "discontinue handling . . . supplementary instructional materials." However, an examination of the statute reveals that it authorizes the State Board of Education to discontinue the adoption of supplementary *textbooks* and discontinue the *distribution* of supplementary textbooks as well as the purchase and resale of library books.

Nowhere in the statute is the State Board of Education authorized to "discontinue handling . . . supplementary instructional materials."

Under paragraph 2 of the temporary rule, the local boards could not compel students to view commercial advertising; this part of the rule was based upon the compulsory attendance laws. It is plainly apparent that paragraph 2 of the rule does not in any way affect the authority of the local board to procure supplementary instructional materials, as it only prohibits the local board from requiring students to view commercial advertising. The authority granted the local boards under subsection 98(b) is not impaired.

For these reasons, assuming local boards were granted exclusive authority to procure supplementary instructional materials prior to the amendment of N.C.G.S. § 115C-98(b), the rule adopted by the State Board of Education in no way conflicted with or impaired such authority of the local board. The statute and the temporary rule are not mutually exclusive. Thus, by executing the Whittle contract the Thomasville School Board violated the temporary rule of the State Board of Education.

III.

Finally, N.C.G.S. § 115C-98(b), the statute in effect at the time of the Whittle contract, referred to supplementary *instructional* materials *needed for instructional purposes* in the public schools. In order for the local board to procure materials pursuant to this statute the materials must be supplementary, they must be instructional, and they must be needed for instructional purposes. The materials in question were supplementary. However, there is a serious issue as to whether Channel One is instructional. The evidence discloses that the students are not required to use Channel One in any way. They are not required to view it, and during the time when it is being exhibited every student in the school could absent himself from the showing of Channel One. How can materials be instructional if the students are not required to use them? Further, there is no evidence that any teacher or other person explains Channel One or uses it in any way while it is being exhibited or thereafter. No teacher expounds upon Channel One to any students, whether assembled to watch Channel One or in any other way. In short, Channel One is not used as instructional material. Also, there is no evidence that students are tested in any way upon the matters broadcast over Channel One. No teacher ques-

STATE v. WHITTLE COMMUNICATIONS

[328 N.C. 456 (1991)]

tions any student concerning his viewing of Channel One, and no student is required to prepare any essay or other written material concerning Channel One. The students are not in any way required to demonstrate any knowledge of the materials contained in Channel One that they might acquire *en passant*. It is apparent that whatever is broadcast over Channel One is not "instructional" material, but is more in the nature of entertainment which students might enjoy during recess.

The record also does not contain any evidence that these materials are *needed for instructional purposes* as required by the statute. Having viewed the Channel One programs submitted to this Court as exhibits, I find nothing in those materials which is needed for instructional purposes for the students. The materials are admittedly edited and designed for exhibition to persons of school age. Such preparation of materials creates the risk that the program may be slanted to favor the best interests of Whittle and its advertisers.[1] Also, one-sixth of the total program is devoted to commercial advertising of such things as Snickers candy bars, Coca Cola, and other goods which would appeal to school-age children. I doubt that it can be said that the advertisements contained in Channel One broadcasts are needed for instructional purposes as recognized by the statute, or portray products which are beneficial to the students.

A recent study by the Southeastern Educational Improvement Laboratory in Research Triangle Park[2] surveyed 3,000 high school students and 140 teachers in North Carolina and Mississippi concerning Channel One.[3] This survey reviewed twenty-six schools in North Carolina. The students were tested twice, in October and December 1990, on current events. This study found that such programs had no significant effect on what students retained unless teachers reinforced the broadcasts with additional lessons. Further,

---

1. All school instructional materials should be for the best interests of the students, not commercial ventures.

2. A summary of this study appeared in the Raleigh News and Observer newspaper on 21 March 1991.

3. CNN Newsroom has a somewhat similar program; however, it does not use commercials nor does it require schools to show at least ninety percent of its broadcasts as required by Channel One in order to keep the video equipment which schools receive on loan as consideration for exhibiting the commercial advertisements.

the students responded that they thought that the products advertised during the broadcast were good for them because they would not be shown in the school if this were not true. This study is a challenging indictment of the Channel One program and lends support to the conclusion that these materials are not instructional and are not needed for instructional purposes within the meaning of the controlling statute.

For these reasons I respectfully dissent from the majority's opinion. Channel One does not improve the education of North Carolina's school children. The contract in this case is in actuality a means by which schools acquire the use of television equipment by allowing Channel One to broadcast commercial advertising to the school students. Channel One is neither instructional nor needed for instructional purposes. To the contrary, it endorses and exacerbates the prevalent habit of watching TV which inhibits the education of our school children. As demonstrated, by contracting with Whittle Thomasville has failed to carry out its duties concerning the materials which may be used in the school program, when they may be used, as well as by procuring materials which are neither instructional nor needed within the meaning of the controlling statute. The board did not have authority to so contract with Whittle. My vote is to reverse.

Chief Justice Exum joins in this dissenting opinion.