IN THE SUPREME COURT OF NORTH CAROLINA

No. 110PA16-2

Filed 8 June 2018

NORTH CAROLINA STATE BOARD OF EDUCATION

v.

THE STATE OF NORTH CAROLINA and THE NORTH CAROLINA RULES REVIEW COMMMISSION

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 805 S.E.2d 518 (2017), reversing and remanding an order granting summary judgment entered on 2 July 2015 by Judge Paul G. Gessner in Superior Court, Wake County. Heard in the Supreme Court on 7 February 2018.

*Robert F. Orr, PLLC, by Robert F. Orr; and Poyner Spruill LLP, by Andrew H. Erteschik, Saad Gul, and John M. Durnovich, for plaintiff-appellant.*

*Joshua H. Stein, Attorney General, by Olga Vysotskaya de Brito, Special Deputy Attorney General, and Amar Majmundar, Senior Deputy Attorney General, for defendant-appellee State of North Carolina.*

*Troutman Sanders LLP, by Christopher G. Browning, Jr., for defendant-appellee North Carolina Rules Review Commission.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher G. Smith and Taylor M. Dewberry, for North Carolina Chamber Legal Institute; P. Andrew Ellen, General Counsel for North Carolina Retail Merchants Association; and J. Michael Carpenter, General Counsel for North Carolina Home Builders Association, amici curiae.*

MORGAN, Justice.

This appeal arises from proceedings instituted by the State Board of Education (the Board) seeking a declaratory ruling that laws requiring the Board to submit the rules and regulations it proposes to a statutorily created committee for review and approval are unconstitutional. We determine that the General Assembly lawfully delegated authority to the Rules Review Commission (the Commission) to review rules adopted by the Board. Therefore, we affirm the opinion of the Court of Appeals.

The Board's complaint listed seven challenges to the Commission's interpretation and application of N.C.G.S. § 150B-2(1a) (definition of "Agency") to the Board. The complaint alleged two as-applied challenges to the Commission's interpretation and application of N.C.G.S. § 150B-2(1a), one joint as-applied and facial challenge regarding the application of the Administrative Procedure Act (the APA), and four facial challenges to the Commission's enabling legislation. The complaint asserted that since the establishment of the Commission in 1986, the Commission "has objected to or modified every rule adopted by the Board and submitted to the [Commission] for approval." The Board claimed in its complaint that it had "declined to adopt a number of rules that it otherwise would have adopted" but for the Commission's actions and that the review process "typically takes a minimum of six months," which has "erode[d] the Board's ability to timely address critical issues facing our State in the area of education." In addition, the Board

maintained that it would no longer voluntarily submit its rules to the Commission, and would instead independently deem its rules to have the force and effect of law.

On 12 January 2015, the State of North Carolina and the Commission moved to dismiss the Board's complaint. The Board voluntarily dismissed without prejudice five of its seven claims, leaving the two as-applied challenges for determination. The Board moved for summary judgment as to its remaining claims. In addition to their motion to dismiss the Board's action, the State and the Commission opposed the Board's motion for summary judgment and argued that they were entitled to summary judgment in their favor. On 2 July 2015, the trial court allowed summary judgment for the Board.

The State and the Commission appealed the trial court's summary judgment order to the North Carolina Court of Appeals. On 19 September 2017, the Court of Appeals filed a divided opinion reversing the trial court's order and remanding the matter to the trial court for entry of judgment in favor of defendants, the State and the Commission. *N. C. State Bd. of Educ. v. State*, ___ N.C. App. ___, 805 S.E.2d 518, (2017). The majority determined that "[t]he General Assembly, by enacting laws adopting a uniform statutory scheme governing administrative procedure, including the establishment of the Commission to review administrative rules, has imposed the requirement that the Board's rules be reviewed and approved prior to becoming effective." *Id.* at ___, 805 S.E.2d at 529. After detailing the history surrounding the

creation and evolution of the Board, the majority stated that the 1942 amendment to the North Carolina Constitution, which included the last substantive changes to the constitution pertaining to the Board, removed the Board's "full power to legislate" but authorized the Board to "make all needful rules and regulations in relation" to specific powers given to the Board, including the ability "generally to supervise and administer the free public school system of the State." *Id.* at \_\_\_, 805 S.E.2d at 523. The court's majority further noted that the 1942 amendment made the Board's exercise of its authority "wholly subject to laws enacted by the General Assembly" by stating that "[a]ll the powers enumerated in this section shall be exercised in conformity with this Constitution and subject to such laws as may be enacted . . . by the General Assembly." *Id.* at \_\_\_, 805 S.E.2d at 527. The majority also concluded that the legislative delegation to the Commission of the review and approval process over the Board's administrative rules is exercised subject to proper limitations on the Commission's authority. *Id.* at \_\_\_, 805 S.E.2d at 531. Such limitations include a recognition that the "Commission's review is limited to determining whether a proposed rule" meets the four criteria listed in N.C.G.S. § 150B-21.9(a). *Id.* at \_\_\_, 805 S.E.2d at 531.

The Court of Appeals majority amplified this recognition by further noting that the "General Assembly has also expressly protected its legislative authority from encroachment by the Commission" via subsection 150B-21.9(a) by prohibiting the Commission from "consider[ing] questions relating to the quality or efficacy of the

rule" at issue and limiting the Commission's review "to determination of the standards set forth in this subsection." *Id.* at ___, 805 S.E.2d at 532. Therefore, as found by the majority, the General Assembly has "restrict[ed] the Commission from providing substantive review of proposed rules." *Id.* at ___, 805 S.E.2d at 532. The majority observed that by allowing for judicial review of a Commission decision regarding an agency's proposed rule, "the General Assembly has provided adequate procedural safeguards" for agencies. *Id.* at ___, 805 S.E.2d at 532. Accordingly, the court held that "the review and approval authority delegated to the Commission is an appropriate delegable power and that the General Assembly has adequately directed the Commission's review of the Board's proposed rules and limited the role of the Commission to evaluating those proposed rules to ensure compliance with the APA." *Id.* at ___, 805 S.E.2d 532. Moreover, the majority concluded that "[b]y providing adequate guidelines for rules review, the General Assembly has ensured that the Commission's authority as it relates to the rules promulgated by the Board is not 'arbitrary and unreasoned' and is sufficiently defined to maintain the separation of powers required by our state constitution." *Id.* at ___, 805 S.E.2d at 532 (quoting *In re Declaratory Ruling*, 134 N.C. App. 22, 33, 517 S.E.2d 134, 142, *appeal dismissed and disc. rev. denied*, 351 N.C. 105, 540 S.E.2d 356 (1999)). The majority ultimately summarized its holding as:

> (1) the 1942 amendment to Article IX of the North Carolina Constitution rebalanced the division of power between the Board and the General Assembly by limiting the Board's

> authority to be subject more broadly to enactments by the
> General Assembly; (2) the General Assembly, by enacting
> the APA and creating the Commission, acted within the
> scope of its constitutional authority to limit the Board's
> rulemaking authority by requiring approval of rules prior
> to enactment; (3) the General Assembly's delegation to the
> Commission of the authority to review and approve Board
> rules does not contravene the Board's general rulemaking
> authority; and (4) the General Assembly has delegated
> review and approval authority to the Commission without
> violating the separation of powers clause by providing
> adequate guidance and limiting the Commission's review
> and approval power.

*Id.* at ____, 805 S.E.2d at 532.

In contrast, the dissenting opinion viewed the delegation of authority by the General Assembly to the Commission to review and approve the Board's rules as improper, characterizing that delegation as an act in contravention of the constitutional authority that "granted and conveyed to the State Board powers, which are not intended to be, and cannot be, removed from the State Board and subordinated to or overruled by an executive agency review body." *Id.* at ____, 805 S.E.2d at 534 (Tyson, J., dissenting). The dissent described the Commission, as an entity "created by statute in 1986, long subsequent to the ratification of the current version of Article IX, § 5, and consist[ing] of ten non-elected members appointed by the General Assembly," to be a body of individuals who have "purported to act on their own accord in delaying and striking down 'needed rules and regulations' established under constitutionally mandated policy of the State Board, without bicameral review and presentment of a bill." *Id.* at ____, 805 S.E.2d at 533. Opining

that "[t]he General Assembly cannot either usurp [or] delegate the specific constitutional authority vested in the State Board" regarding "educational policy and rulemaking authority," *id.* at ___, 805 S.E.2d at 533, the dissent here adopted a stance that "[b]y enacting the [APA], the General Assembly could not and did not transfer the State Board's constitutionally specified rulemaking power to an agency rule oversight commission under the [APA]," *id.* at ____, 805 S.E.2d at 534. As a result, the dissenting judge at the Court of Appeals would affirm the trial court's summary judgment determination in favor of the Board in light of a perceived failure by the State and the Commission to show error by the trial court and in light of the dissent's interpretation of the relevant law. *Id.* at ____, 805 S.E.2d at 536.

## I.   History of the Board of Education

In their 1868 constitution, the people of North Carolina created the Board to supervise and administer the State's free public school system. The Constitution of North Carolina established the State Board of Education using the following language:

> The Board of Education shall succeed to all the powers and trusts of the President and Directors of the Literary Fund of North Carolina, and shall have full power to legislate and make all needful rules and regulations in relation to free public schools and the educational fund of the State; but all acts, rules and regulations of said Board may be altered, amended or repealed by the General Assembly, and when so altered, amended or repealed, they shall not be re-enacted by the Board.

N.C. Const. of 1868, art. IX, § 9. In 1937 the General Assembly directed Governor Clyde R. Hoey to appoint a commission to examine North Carolina's public educational system and recommend improvements to lawmakers. Act of Mar. 22, 1937, ch. 379, 1937 N.C. Pub. Sess. Laws, 709. The resulting Commission on Education determined that North Carolina's public education system was being governed not only by the State Board of Education but by several other boards as well. *Report and Recommendations of the Governor's Commission on Education* 30 (Dec. 1, 1938) [hereinafter 1938 Report]. The Commission recommended that the General Assembly transfer all duties and work from the various other education-related boards and commissions to the State Board of Education. *Id.* at 30-31. In 1942 the voters of North Carolina adopted a constitutional amendment proposed by the General Assembly making several changes to the governance and authority of the Board as follows:

> The State Board of Education shall succeed to all the powers and trusts of the President and Directors of the Literary Fund of North Carolina and the State Board of Education as heretofore constituted. The State Board of Education shall have power to divide the State into a convenient number of school districts; to regulate the grade, salary and qualifications of teachers; to provide for the selection and adoption of the textbooks to be used in the public schools; to apportion and equalize the public school funds over the State; and generally to supervise and administer the free public school system of the State and make all needful rules and regulations in relation thereto. All the powers enumerated in this section shall be exercised in conformity with this Constitution and subject

to such laws as may be enacted from time to time by the
General Assembly.

N.C. Const. of 1868, art. IX, § 9 (1942). These were the last material changes to the

Board's power.

The constitution was rewritten again in 1970 and included the following

language, which remains unchanged:

> The State Board of Education shall supervise and
> administer the free public school system and the
> educational funds provided for its support, except the funds
> mentioned in Section 7 of this Article, and shall make all
> needed rules and regulations in relation thereto, subject to
> laws enacted by the General Assembly.

N.C. Const. art. IX, § 5. The plain language of the constitution does not expressly

mention a review process for the Board's rules.

**II. Review of the General Assembly's Constitutional Authority Regarding the State Board of Education**

A cursory review of the history of the North Carolina Constitution indicates

that the General Assembly has always been authorized to check the Board's power to

some degree. The 1868 constitution provided that acts, rules, and regulations enacted

by the Board could be "altered, amended or repealed" by the General Assembly. N.C.

Const. of 1868, art. IX, § 9. Each change to the constitution thereafter stated in more

general terms that the Board's authority over the State's public education system is

"subject to laws enacted by the General Assembly." *Id.*; N.C. Const. of 1868, art. IX,

§ 9 (1942); N.C. Const. art. IX, § 5.  This review of the provisions of the North Carolina Constitution and its changes to these dictates clearly shows that the General Assembly currently has the power to enact laws with respect to education that govern the Board's rules and regulations.  In light of this authority of the General Assembly, which is derived from Article IX, Section 5 of the North Carolina Constitution and is consistent with this Court's analysis of further relevant considerations, we conclude that the General Assembly is empowered to delegate authority to the Commission to review the Board's rules.

### III.  History of the APA and the Rules Review Commission

In 1973 the General Assembly enacted the APA in response to the United States Supreme Court's grant of "extensive remedial relief from state and federal bureaucratic action through an expansive interpretation of the constitutional right to an administrative hearing."  Julian Mann, III, *Administrative Justice: No Longer Just A Recommendation*, 79 N.C. L. Rev. 1639, 1642 (2001); *see* N.C.G.S. § 150A-1(b) (Supp. 1977).  As noted by the Court of Appeals majority in the present case, "[t]he APA provides a comprehensive statutory scheme for procedures to allow and require, *inter alia*, notice to the public of proposed rules, public input regarding proposed rules, and due process for individuals affected by administrative rules and decisions." *State Bd. of Educ.*, ___ N.C. App. at ___, 805 S.E.2d at 524 (majority opinion).  The APA was rewritten and recodified as Chapter 150B of the North Carolina General

Statutes, effective 1 January 1986, with the stated purpose of "establish[ing] a uniform system of administrative rule making and adjudicatory procedures for agencies. The procedures ensure that the functions of rule making, investigation, advocacy, and adjudication are not all performed by the same person in the administrative process." N.C.G.S. § 150B-1(a) (2017). When the APA was recodified, the General Assembly enacted an additional statute that established the Administrative Rules Review Commission. Act of July 16, 1986, ch. 1028, sec. 32, 1985 N.C. Sess. Laws (Reg. Sess. 1986) 640, 642-45 (codified at N.C.G.S. § 143B-30.1). As currently provided in N.C.G.S. § 143B-30.1(a), "[t]he Commission shall consist of 10 members to be appointed by the General Assembly, five upon the recommendation of the President Pro Tempore of the Senate, and five upon the recommendation of the Speaker of the House of Representatives." N.C.G.S. § 143B-30.1(a) (2017). An agency must submit all temporary and permanent rules it adopts to the Commission before any such rules can be published in the North Carolina Administrative Code. *Id.* § 150B-21.8 (2017).[1] If the Commission objects to an agency's adopted rule, then the

---

[1] "Agency" is defined by the APA as

> an agency or an officer in the executive branch of the government of this State and includes the Council of State, the Governor's Office, a board, a commission, a department, a division, a council, and any other unit of government in the executive branch. A local unit of government is not an agency.

N.C.G.S. § 150B-2(1a) (2017). Although some government agencies are partially or fully exempt from the APA, the Board is not one of these agencies.

rule is not deemed acceptable for inclusion in the Administrative Code unless the agency revises the rule and the revised version is approved by the Commission. *See id.* §§ 150B-21.10(2), -21.12(a)(1), -21.19(4) (2017).

The Commission is subject to oversight by the Joint Legislative Administrative Procedure Oversight Committee. *Id.* §§ 120-70.100 to -70.102 (2017). Among other things, the Committee is specifically responsible for reviewing each rule objected to by the Commission "to determine if statutory changes are needed to enable the agency to fulfill the intent of the General Assembly." *Id.* § 120-70.101(1). The Committee also receives a report regarding each rule approved by the Commission. *Id.* § 120-70.101(2).

## IV. Standard of Review

This Court construes and applies the provisions of the Constitution of North Carolina with finality. *E.g., Hart v. State,* 368 N.C. 122, 130, 774 S.E.2d 281, 287 (2015); *State ex rel. Martin v. Preston,* 325 N.C. 438, 449, 385 S.E.2d 473, 479 (1989). We review constitutional questions de novo. *Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.,* 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001). In exercising de novo review, we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond reasonable doubt. *Baker v. Martin,* 330 N.C. 331, 334-35, 410 S.E.2d 887, 889 (1991) (citations omitted). In other words, the constitutional

violation must be plain and clear. *Preston,* 325 N.C. at 449, 385 S.E.2d at 478. To determine whether the violation is plain and clear, we look to the text of the constitution, the historical context in which the people of North Carolina adopted the constitutional provision at issue, and our precedents. *See id.* at 449, 385 S.E.2d at 479 ("In interpreting our Constitution—as in interpreting a statute—where the meaning is clear from the words used, we will not search for a meaning elsewhere."); *Sneed v. Greensboro City Bd. of Educ.,* 299 N.C. 609, 613, 264 S.E.2d 106, 110 (1980) ("Inquiry must be had into the history of the questioned provision and its antecedents, the conditions that existed prior to its enactment, and the purposes sought to be accomplished by its promulgation."); *Elliott v. State Bd. of Equalization,* 203 N.C. 749, 753, 166 S.E. 918, 921 (1932) ("Likewise, we may have recourse to former decisions, among which are several dealing with the subject under consideration."). With these principles in mind, we now examine the issues raised by the Board's appeal.

## V. Issues of First Impression

This case concerns issues of first impression in the jurisprudence of North Carolina. Prior cases decided by this Court that addressed issues resembling those presented in the current case, namely *Guthrie v. Taylor* and *State v. Whittle Communications*, have been cited here by the Board, the State, and the Commission, and their applicability to the instant matter was addressed by the Court of Appeals.

In *Guthrie* the plaintiff school teacher disagreed with a regulation of the State Board of Education requiring "a teacher in the public school system to procure the renewal of his or her teachers' certificate each five years by earning, at the teacher's expense, credits, at least some of which must be earned by the successful completion of additional college or university courses." *Guthrie v. Taylor*, 279 N.C. 703, 709, 185 S.E.2d 193, 198 (1971) *cert. denied*, 406 U.S. 920 (1972). The General Assembly had passed several statutes requiring all teachers in the public schools of North Carolina to hold such certificates. *Id.* at 711, 185 S.E.2d at 199. The Board was authorized to "control [the] certificating [of] all applicants for teaching, supervisory, and professional positions in all public elementary and high schools of North Carolina." *Id.* at 711, 185 S.E.2d at 199. The plaintiff in *Guthrie* contended that the authority to determine teacher certification requirements was not properly delegated to the Board because the applicable statutes did not set forth standards to govern the Board in the exercise of its duty to promulgate and administer rules related to the certification of teachers. *Id.* at 711, 185 S.E.2d at 199. We determined that this argument was meritless because the statutes at issue "neither enlarge[d] nor restrict[ed] the authority to make rules and regulations concerning the certification of teachers conferred by the Constitution of North Carolina upon the State Board of Education. Thus, [the statutes] are not delegations of power to the State Board of Education by the General Assembly." *Id.* at 711, 185 S.E.2d at 199. *Guthrie* is therefore not particularly helpful in resolving the present case, which concerns the

General Assembly's delegation of authority to the Commission related to reviewing administrative rules of the Board.

Likewise, in *Whittle* the defendant Whittle Communications, L.P. developed a short video news program, known as *Channel One,* that was designed to keep students abreast of current affairs. *State v. Whittle Commc'ns*, 328 N.C. 456, 458, 402 S.E.2d 556, 557 (1991). The Board sought to adopt a temporary rule barring contracts between companies such as Whittle and local school boards for the use of supplementary materials like *Channel One* to educate children. *Id.* at 459-60, 402 S.E.2d at 558. The dispute in *Whittle* was prompted by the Commission's disapproval of the temporary rule on the ground that it exceeded the Board's statutory authority. *Id.* at 460, 402 S.E.2d at 558. The trial court reviewed the matter and found that the Board's rule was adopted in violation of the APA making it invalid. *Id.* at 462, 402 S.E.2d at 559. On appeal, this Court noted that the Board's temporary rule concerned an area which the General Assembly had "specifically placed under the control and supervision of the local school boards." *Id.* at 458, 402 S.E.2d at 557. We opined that

> [s]ince *Channel One* is a supplementary instructional material and since the General Assembly placed the procurement and selection of supplementary instructional materials under the control of the local school boards, the State Board acted in excess of its authority in enacting this rule because the State Board had no authority to enact a rule on this subject.

*Id.* at 466, 402 S.E.2d at 562. As with *Guthrie*, the *Whittle* case does not address the issue presently before the Court because *Whittle* involved the Board's attempt to

enact a rule on a subject that had specifically been delegated to local school boards by the General Assembly. *Whittle* states the principle that "Article IX, § 5 of the North Carolina Constitution, which grants the State Board the authority to 'make all needed rules,' also limits this authority by making it 'subject to the laws enacted by the General Assembly.'" *Id.* at 464, 402 S.E.2d at 560. While that principle certainly applies here, neither *Guthrie* nor *Whittle* specifically addresses the issue presented in this case.

## VI.   Plain Language and Intent of Article IX, Section 5

Turning to the issues presently before the Court, the Board first contends that the plain language of Article IX, Section 5 of the North Carolina Constitution does not allow the Commission to review the Board's rules. Constitutional interpretation begins with the plain language as it appears in the text. *E.g.*, *Coley v. State*, 360 N.C. 493, 498, 631 S.E.2d 121, 125 (2006). Article IX, Section 5 states:

> The State Board of Education shall supervise and administer the free public school system and the educational funds provided for its support, except the funds mentioned in Section 7 of this Article, and shall make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly.

The plain language of this provision expressly indicates that the Board's prescribed power is subject to laws enacted by the General Assembly. The pertinent issue framed by the Board in this appeal concerns its ability to promulgate rules and regulations free of scrutiny from the Commission. While the plain language of the

cited constitutional passage does not mention the Commission or its power to review the Board's rules, the Commission's authority to do so derives from laws enacted by the General Assembly—laws to which the Board is unequivocally subject under Article IX, Section 5. The constitution therefore grants the General Assembly the power to enact a law to delegate its authority to the Commission, even though such a law could directly affect the Board's exercise of its constitutionally recognized duties.

Additionally, while a review of the intent of the framers of the North Carolina Constitution provides welcome guidance about the extent of authority reposed in the Board with relation to the General Assembly, there is no indication that the Commission is somehow inhibited from reviewing and approving the Board's rules and regulations. Questions regarding construction of a constitution "are . . . governed by the same general principles which control in ascertaining the meaning of all written instruments, and '[t]he fundamental principle of constitutional construction is to give effect to the intent of the framers of the organic law and [the individuals] adopting it.' " *Perry v. Stancil*, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) (first citing and then quoting 11 Am. Jur. *Construction of Constitutions* § 49, at 658 (1937); *id.* § 61, at 674; then citing *Branch Banking & Tr. v. Hood*, 206 N.C. 268, 173 S.E. 601 (1934); and then citing *Atlas Supply Co. v. Maxwell*, 212 N.C. 624, 194 S.E. 117 (1937); and then citing *State v. Emery*, 224 N.C. 581, 31 S.E.2d 858 (1944)). Likewise, in interpreting our state's constitution, we are bound to "give effect to the intent of the framers of the organic law and of the people adopting it." *Beaufort Cty. Bd. of*

*Educ. v. Beaufort Cty. Bd. of Comm'rs*, 363 N.C. 500, 505, 681 S.E.2d 278, 282 (2009) (quoting *Perry,* 237 N.C. at 444, 75 S.E.2d at 514).  Moreover, "[w]here one of two reasonable constructions will raise a serious constitutional question, the construction which avoids this question should be adopted."  *In re Arthur,* 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977).

In 1931, while the 1868 constitution was still in effect, the General Assembly established a Constitutional Commission to study the need for various constitutional amendments. *Report of the North Carolina Constitutional Commission*, *as reprinted in* 11 N.C. L. Rev. 5 (1932).  In preparation for considering amendments involving the implementation and oversight of the public education system in North Carolina, the Constitutional Commission requested the Department of Legislative Research and Drafting at Duke University Law School to prepare a narrowly focused report on constitutional provisions involving public education governance.  *See* Dep't. of Legis. Research & Drafting, Duke Univ. Law Sch., *Report on the Subject of the Existing Constitutional Provisions Relating to Public Education in North Carolina* 1 (May 1932) [hereinafter Education Report].  The purpose of the Education Report was to "set[ ] forth the actual workings of those provisions in the present Constitution of North Carolina relating to public education," and its objective was "to discover, if possible, wherein these existing constitutional provisions hamper the proper development of the State's educational system, and thus to indicate what changes may be desirable." *Id.*

The Education Report detailed an alleged abuse of legislative power that ultimately led to a constitutional amendment in 1942. *Id.* at 9-10. The Education Report described how the General Assembly used the then-existing language of the constitution "as a means of stripping the Board of its authority over the public schools" rather than "as a mere reserved veto or amending power." *Id.* at 9. The report noted that the General Assembly "from time to time t[ook] certain powers of control from . . . [the] Board and vested them in new boards created by legislative authority." *Id.* at 9-10. The Education Report added that "it appears to be a fact that the Legislature has thus taken the control of the State's public school system from the Board of Education set up in the Constitution and vested the same in a board of its own creation." *Id.* at 10-11. Ultimately, the report recommended amendments to strengthen the public education system aimed at, *inter alia*, remedying the alleged abuse of power exercised by the General Assembly. *Id.* at 31-32. The Education Report suggested that "[c]omplete control over the State's public school system [be] vested in this one Board, subject only to general supervision by the General Assembly.'" *Id.* at 32. Nonetheless, the constitution was not amended at that time.

Subsequently, in 1937 the General Assembly directed the Governor to appoint a commission to review the public education system again. Ch. 379, 1937 N.C. Pub. [Sess.] Laws 709. The report issued by the commission reiterated some of the problems discussed in the earlier Education Report. For example, the latter report discussed how three commissions were created to tackle the specific administrative

duties related to textbooks, namely the State Textbook Commission, the Elementary

Textbook Commission and the State Committee for High School Textbooks. *See* 1938

Report at 30. The 1938 Report concluded that "[t]here seems to be much duplication

and some dual control in the workings of these various boards and unnecessary

duplication in the work of school administrators." *Id.* Thus, the Commission on

Education concluded that "all these boards should be consolidated under [the Board],"

and "the direction of all activities of the teaching profession should come from this

central board" and not from other administrative agencies. *Id.* The Commission

encouraged the General Assembly to accomplish the amendment's purpose *statutorily*

in advance of the constitutional amendment, as a means of providing "immediate

relief . . . rather than wait[ing]." *Id.* at 31.

In 1942 the constitution was amended[2] in response to concerns identified by

the two reports from the 1930s. Specifically, the 1942 version of the constitution

clarified the Board's authority stating, in pertinent part, that the Board

> shall have power to divide the State into a convenient
> number of school districts; to regulate the grade, salary and
> qualifications of teachers; to provide for the selection and
> adoption of the textbooks to be used in the public schools;
> to apportion and equalize the public school funds over the
> State; and generally to supervise and administer the free
> public school system of the State. . . .

---

[2] The amendment was authorized to be submitted to a vote of the people by Act of Mar. 13, 1941, ch. 151, 1941 N.C. Pub. [Sess.] Laws 240.

N.C. Const. of 1868 art. IX, § 9 (1942).  As noted earlier, the Board's constitutional authority was preserved when the constitution was amended again in 1971.  The General Assembly's authority to enact laws to which the Board's rules and regulations are subject has remained throughout every version of the constitution.

While this review of the history of the Board's constitutional authority reveals a concerted effort to mollify the General Assembly's alleged attempt to dilute the Board of its power in the past, the Board's present contention that the Commission's review of the Board's rules is "consistent with the mischief sought to be remedied" from the 1930s is without merit.  There are major differences between the General Assembly's actions regarding the Board in the past and the General Assembly's more recent delegation to the Commission in relation to the Board's rulemaking.  As detailed above, in the past the General Assembly created new boards that allegedly stripped the Board of much of its power in response to unflattering reports about the Board's administrative shortcomings; in the present, the General Assembly has delegated authority to a sole entity—the Commission—that has a well-defined role, subject to legislative oversight, regarding the Board's and other agencies' rulemaking procedures.  In the 1930s multiple state boards had the power to exercise authority over various aspects of public educational matters; now, that power has been consolidated into the Board.  The Commission's authority to review the Board's proposed rules is not a corrective measure, but a process that applies uniformly to numerous state agencies like the Board.  Lastly, the Commission does not review the

Board's rules from a substantive standpoint. Section 150B-21.9 states that "[t]he Commission shall not consider questions relating to the quality or efficacy of the rule but shall restrict its review to a determination of the standards set forth in this subsection" which are procedural in nature. N.C.G.S. § 150B-21.9(a) (2017).

We conclude that the plain language of Article IX, Section 5 of the North Carolina Constitution authorizes the General Assembly to enact laws that delegate authority to the Commission to review rules adopted by the Board. Moreover, a review of the history of the relevant amendments to the constitution does not indicate that the document's framers intended that the Board would have the unbridled power to adopt rules and regulations of its own volition. We therefore conclude that the General Assembly has lawfully required the Board to submit its proposed rules to the Commission for review because this procedure was statutorily enacted and the Board's prescribed constitutional duties are subject to laws enacted by the General Assembly. The Board's proposed rules which are subject to this mandated submission to the Commission for review and approval are those which fall within the purview of the Administrative Procedure Act in order to ensure compliance with the provisions of this legislative enactment.

## VII. Delegation of Authority

The General Assembly properly delegated authority to the Commission to review the Board's rules.[3]  Article I, Section 6 of the North Carolina Constitution mandates that the State's three branches of government "shall be forever separate and distinct from each other."  Nonetheless, in *Adams v. North Carolina Department of Natural & Economic Resources*, the cornerstone case concerning the General Assembly's ability to delegate authority to agencies, we acknowledged that a literal interpretation of the

> Constitution would absolutely preclude any delegation of legislative power.  However, it has long been recognized by this Court that the problems which a modern legislature must confront are of such complexity that strict adherence to ideal notions of the non-delegation doctrine would unduly hamper the General Assembly in the exercise of its constitutionally vested powers.

295 N.C. 683, 697, 249 S.E.2d 402, 410 (1978) (citations omitted).  "[W]e have repeatedly held that the constitutional inhibition against delegating legislative authority does not preclude the legislature from transferring adjudicative and rule-

---

[3] At the outset the Commission contends that the Board dismissed all counts in its complaint except Counts 2 and 3.  It is the Commission's view that these counts presented an exceedingly narrow issue before the Court: whether the Commission correctly interpreted N.C.G.S. § 150B-2(1a) as requiring the Board to comply with the APA's rulemaking provisions.  Thus, the Commission attempts to limit the issues before this Court to statutory construction as opposed to constitutional issues.  However, a review of the complaint and the superior court's decision clearly shows that the Board raised constitutional arguments as opposed to statutory challenges.  We therefore conclude that the Commission's statutory construction argument is meritless.

making powers to administrative bodies provided such transfers are accompanied by adequate guiding standards to govern the exercise of the delegated powers." *Id.* at 697, 249 S.E.2d at 410 *(*first citing *State ex rel. Dorothea Dix Hosp. v. Davis*, 292 N.C. 147, 232 S.E.2d 698 (1977); then citing *Guthrie*, 279 N.C. 703, 185 S.E.2d 193).

"In the search for adequate guiding standards the primary sources of legislative guidance are declarations by the General Assembly of the legislative goals and policies which an agency is to apply when exercising its delegated powers. We have noted that such declarations need be only 'as specific as the circumstances permit.'" *Id.* at 698, 249 S.E.2d at 411 (first quoting *N.C. Tpk. Auth. v. Pine Island, Inc.*, 265 N.C. 109, 115, 143 S.E.2d 319, 323 (1965) then citing *Jernigan v. State,* 279 N.C. 556, 184 S.E.2d 259 (1971)). The General Assembly is required only to articulate "general policies and standards . . . which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances." *Id.* at 698, 249 S.E.2d at 411. Procedural safeguards are also an indication that a particular delegation of authority is supported by adequate guiding standards. As previously stated by this Court in *Adams*, "[p]rocedural safeguards tend to encourage adherence to legislative standards by the agency to which power has been delegated." *Id.* at 698, 249 S.E.2d at 411.

In the current case, the Commission was given adequate guidance to enable it to properly review the administrative rules of other agencies. First, the Commission must determine whether a rule meets all of the following criteria:

> (1) It is within the authority delegated to the agency by the General Assembly.
>
> (2) It is clear and unambiguous.
>
> (3) It is reasonably necessary to implement or interpret an enactment of the General Assembly, or of Congress, or a regulation of a federal agency. The Commission shall consider the cumulative effect of all rules adopted by the agency related to the specific purpose for which the rule is proposed.
>
> (4) It was adopted in accordance with Part 2 of this Article.

N.C.G.S. § 150B-21.9(a). Second, "[t]he Commission shall not consider questions relating to the quality or efficacy of the rule." *Id.* Under the rubric of its constitutional authority enunciated in Article IX, Section 5, the General Assembly has enacted laws to which the Board is subject and, in accord with this constitutional authority, has provided clear and ample statutory direction concerning the Commission's powers and restrictions. The Commission is directed to initially determine whether the agency has the authority to adopt a given rule. The Commission next determines whether the agency followed the proper procedure to promulgate the rule. The Commission is charged with reviewing all previous rules related to the specific purpose for which the current rule is proposed in order to determine if the rule under scrutiny is necessary. The Commission reviews the rule for clarity to ensure that it is understandable. While the General Assembly's authority is clearly established by way of the North Carolina Constitution and the Commission's authority is clearly established by way of statutory law, if an agency

such as the Board desires to challenge the Commission's exercise of its delineated duties, "[w]hen the Commission returns a permanent rule to an agency . . . the agency may file an action for declaratory judgment in Wake County Superior Court." N.C.G.S. § 150B-21.8(d) (2017). In light of these observations, we therefore hold that the General Assembly has enacted appropriate statutes to Article IX, Section 5 of the North Carolina Constitution that properly and clearly delegate to the Commission the authority to review the Board's rules and that include sufficient restrictions on the Commission and safeguards to ensure the Board's continued ability to fulfill its mandates as set forth in the state constitution.

The Board also asserts that the Commission is not equipped to properly assess public education legislation and rules adopted thereunder in response to complex conditions that the General Assembly cannot directly confront. The Board's argument might have some merit if the Commission were tasked with reviewing the rules from a substantive standpoint. But, in its delegation of authority to the Commission regarding its review of the Board's rulemaking the General Assembly has expressly eliminated such involvement by the Commission via N.C.G.S. § 150B-21.9(a). The Commission is tasked only with the responsibility to review the Board's rules from a procedural perspective for clarity and to ensure that the rules are adopted in compliance with the APA. Such a review does not require special expertise pertaining to public education.

We hold that Article IX, Section 5 of the North Carolina Constitution authorizes the General Assembly to statutorily delegate authority to the Rules Review Commission to review and approve the administrative rules that are proposed by the State Board of Education for codification. We therefore affirm the majority opinion of the Court of Appeals.

AFFIRMED.

Chief Justice MARTIN dissenting.

The plain language of our state constitution and an analysis of that language in light of the delegation doctrine both point to a particular result in this case. But they both point to the opposite of the result that the majority reaches. As a result, I respectfully dissent.[1]

Article IX, Section 5 of the North Carolina Constitution says:

> The State Board of Education shall supervise and administer the free public school system and the educational funds provided for its support, except the funds mentioned in Section 7 of this Article, and shall make all needed rules and regulations in relation thereto, *subject to laws enacted by the General Assembly*.

(Emphasis added.) The issue here, in a nutshell, is whether the italicized language allows the General Assembly to subject the Board of Education's proposed rules and regulations to review and approval by the Rules Review Commission.

The plain language of Article IX, Section 5 gives us an answer, but not the one that the majority provides. The words "subject to" tell us that the phrase that comes after those words will specify something that can restrict the Board of Education's

---

[1] The Superintendent of Public Instruction serves as the Secretary and Chief Administrative Officer of the Board of Education. N.C. Const. art. IX, § 4(2). This case does not concern the respective duties of the Superintendent and the Board under our state constitution, and nothing in this dissent should be construed to express any opinion on the merits of *North Carolina State Board of Education v. State of North Carolina, et al.*, Case No. 333PA17.

constitutional authority to make rules and regulations. Because only the "subject to" clause qualifies the Board's authority, only that thing—outside of the constitution itself—can restrict the Board's authority. That thing is "laws enacted by the General Assembly." N.C. Const. art. IX, § 5. And a "law[ ] enacted by the General Assembly" must go through the bicameral legislative approval process and be presented to the Governor. *Id.* art. II, § 22. If the Governor vetoes a bill that has been presented to him, the General Assembly has to override that veto for the bill to become a law. *Id.* But a determination by the Rules Review Commission—which does not go through this enactment process—is *not* a law. It follows from this, as sure as spring follows winter, that the phrase "subject to laws enacted by the General Assembly" does not mean—and cannot mean—"subject to determinations by the Rules Review Commission."

The majority, however, does not merely disagree with this conclusion. The majority does not say, for instance, that the pertinent language is ambiguous and that our Court must therefore seek guidance outside of the constitutional text. Instead, it says that the *plain language* of Article IX, Section 5 *affirmatively permits* the Rules Review Commission to exert control over the Board of Education's power to make rules and regulations. I, for one, cannot see how this construction is even plausible. Remember, for a legal provision to have a plain-language meaning, its text must be so clear and unambiguous that it cannot be read any other way. *See, e.g., Lanvale Props., LLC v. County of Cabarrus*, 366 N.C. 142, 154, 731 S.E.2d 800, 809-

10 (2012). So the majority's plain-language argument would be right only if Article IX, Section 5 said something like "subject to laws enacted by the General Assembly *or to a body created by laws enacted by the General Assembly*." Alas, it does not. In essence, the majority is adding words to the constitution in the guise of interpreting it, and is violating a canon of construction so basic that it doesn't even have a name: the "don't add twelve words to a legal text" canon. If this is a plain-language interpretation, then the phrase "plain language" no longer has any meaning in our jurisprudence.

The majority also holds that "[t]he General Assembly properly delegated authority to the Commission to review the Board's rules." But this is not a delegation case because it does not concern our state constitution's delegation *provision*. The delegation doctrine, after all, arises out of Article II, Section 1, which states that "[t]he legislative power of the State shall be vested in the General Assembly." *See, e.g.*, *Northampton County Drainage Dist. No. One v. Bailey*, 326 N.C. 742, 747-48, 392 S.E.2d 352, 356 (1990) (alteration in original) (quoting N.C. Const. art. II, § 1). Our caselaw interpreting this provision undoubtedly indicates that, as a practical matter, "[t]he legislative power of the State" includes the power to delegate rulemaking and regulatory authority to administrative bodies. *See, e.g.*, *Adams v. N.C. Dep't of Nat. & Econ. Res.*, 295 N.C. 683, 696-97, 249 S.E.2d 402, 410-11 (1978). This case, though, arises out of the much more specific language of Article IX, Section 5—which, as I have said, speaks of "laws enacted by the General Assembly." And we have never

held that the General Assembly can delegate *the power to enact laws.* In fact, "[i]t is well settled that the Legislature *may not* delegate its power to make laws[,] even to an administrative agency." *Bulova Watch Co. v. Brand Distribs. of N. Wilkesboro, Inc.*, 285 N.C. 467, 475, 206 S.E.2d 141, 147 (1974) (emphasis added); *see also Adams*, 295 N.C. at 696, 249 S.E.2d at 410 ("[T]he legislature may not abdicate its power to make laws . . . ." (quoting *N.C. Tpk. Auth. v. Pine Island, Inc.*, 265 N.C. 109, 114, 143 S.E.2d 319, 323 (1965))). Well settled, that is, until today. What's next? Are we going to hand over our power to decide cases to the Rules Review Commission, too?

But there is another, equally compelling reason that the delegation doctrine cannot permit the Rules Review Commission to exert the power that it claims to have in this context. Bear in mind that the delegation doctrine, as relevant here, pertains to the General Assembly's ability to delegate the power *to make rules and regulations*. In the realm of education, Article IX, Section 5 has already assigned that power exclusively to the Board of Education. *See* N.C. Const. art. IX, § 5 ("The State Board of Education shall supervise and administer the free public school system and the educational funds provided for its support, except the funds mentioned in Section 7 of this Article, and shall make *all needed rules and regulations* in relation thereto . . . ." (emphasis added)). So what exactly is left for the General Assembly to delegate?

This analysis reveals an additional problem with the majority's position. When the Rules Review Commission reviews the Board of Education's proposed rules and

regulations, the Commission is exercising power that the constitution has already granted to the Board. Let's look at the Commission's statutory powers. The Commission can object to rules or regulations, delay rules or regulations, and suggest changes to rules or regulations on a number of highly discretionary grounds. *See* N.C.G.S. §§ 150B-2(8a), -21.9(a)(1)-(4), -21.10 (2017). Ultimately, the Commission can decide to block the Board of Education's adoption of a rule or regulation unless and until the Board changes the rule or regulation to conform to the Commission's wishes. *See id.* §§ 150B-21.12, -21.19(4) (2017). The Board's only recourse, if it does not change the rule or regulation, is to bring a declaratory judgment action in superior court. *See id.* § 150B-21.8(d) (2017). In effect, then, the Commission controls the final step in the process of adopting rules and regulations, and keeps the Board from adopting rules and regulations of which the Commission disapproves unless the Board gets a favorable ruling from a court. That cannot be constitutional, given that the Board has the sole constitutional authority to make rules and regulations in this area of the law, subject only to "laws enacted by the General Assembly." N.C. Const. art. IX, § 5.

The majority rests its holding on the assertion that "[t]he Commission is tasked only with the responsibility to review the Board's rules from a procedural perspective" and is not "tasked with reviewing the rules from a substantive standpoint." But the plain language of Article IX, Section 5, which subjects the Board's power to make rules and regulations only to "laws enacted by the General Assembly," does not draw

any distinction between procedural and substantive restrictions on the Board's power. Once again, the majority is simply adding words to the constitution that are not there.

Anyway, checking for compliance with procedural requirements is inherently part of the process of making rules and regulations. And, in the education context, the General Assembly cannot delegate procedural rulemaking authority any more than it can delegate substantive rulemaking authority. So even procedural rulemaking authority cannot be delegated to the Rules Review Commission.

Not every constitutional provision has a plain meaning. But Article IX, Section 5 does. It prevents the Rules Review Commission from conducting its statutorily prescribed review of the Board of Education's proposed rules and regulations. I therefore respectfully dissent.

Justice HUDSON joins in this dissenting opinion.